**COOK v. GEORGIA GROCERY, Inc., et al.**

**No. Y-92182.**

Industrial Commission.

November 20, 1959.

</div>

Ralph A. Hauser, Deerfield Beach, for claimant.

Charles D. Crowley, Fort Lauderdale, for employer and insurance carrier.

PHILIP L. KNOWLES, Deputy Commissioner.

A hearing was held in this case at Fort Lauderdale on October 5, 1959. After hearing and considering the evidence presented, the undersigned deputy commissioner finds—

1. That this commission has jurisdiction of the parties and the subject matter of this cause.

2. That the claimant, Thomas L. Cook, filed a claim with the commission at Tallahassee on July 28, 1958 alleging that he had suffered an accident and injury on June 28, 1958 but had not been paid compensation. By letter dated October 1, 1959 he claimed to be permanently and totally disabled.

3. That at the said hearing his claim was stated to be—(1) that he is permanently and totally disabled; (2) that the carrier refused to pay compensation within 21 days of notice of the injury; (3) that the carrier has refused to pay the bill of Coral Pines Nursing Home for services rendered and the bill of Dr. A. J. Ehlert, neurosurgeon, for consultation; (4) for medical and nursing services as needed at claimant's home; (5) for attorney's fees for claimant's attorney.

4. That the carrier stated its position to be—(1) that its maximum liability for medical care and nursing services should be $325 monthly (during the hearing raised to $375 monthly); (2) that claimant is not entitled to an attorney's fee for services rendered by his attorney because claimant had at all times been paid compensation by either the employer or the carrier; (3) that the carrier is not responsible for Dr. Ehlert's bill for consultation; (4) that the bill of the Coral Pines Nursing Home is excessive.

5. The parties then stipulated that on June 28, 1959, the claimant was an officer and employee of Georgia Grocery, Inc., insured by Manhattan Fire and Marine Insurance Co., when he suffered an injury by accident arising out of and in the course of his employment, when while taking the employer's money for deposit he was accosted by a robber and shot in the head. At the time of his injury he was receiving a salary of $75 a week, and he is entitled to a compensation rate of $35 weekly; and that claimant was totally and permanently disabled.

6. That claimant was injured on Saturday, June 28, 1958. On the following Monday, June 30, 1958, the claimant, through his wife, notified Mr. Reid Hardin of the Hardin Insurance Agency, who represented Manhattan Fire and Marine Insurance Co., of claimant's injury. On the same date Mr. Hardin called Mr. Kuhn of Crawford and Company, Fort Lauderdale, the carrier's adjuster, and advised him of claimant's accident and injury. Claimant thereafter, through his wife, secured the services of an attorney, and a claim was then filed with the commission at Tallahassee on July 28, 1958.

Thereafter, the insurance carrier herein, on August 6, 1958, issued a draft for five weeks' compensation beginning July 3, 1958, which was dated and mailed on August 6, 1958, and received by claimant through the mail on August 8, 1958. The carrier has continued paying compensation to date. The employer, Georgia Grocery, Inc., continued paying to claimant his full salary through July 26, 1958.

The carrier at the hearing of October 5, 1959 contended that its maximum liability for medical treatment and nursing services hereafter should be $375 monthly—on the theory that claimant could be cared for in a nursing home for that amount of money.

7. That at the time of his injury, claimant was 51 years of age, and received a gunshot wound in the right frontal area of the skull. The gunshot wound caused a large bone defect with indriven bone fragments together with a piece of the bullet to lodge in the skull, penetrating the brain, and lying within the right lateral hemisphere of the skull. The left frontal lobe also sustained contusions from the blast effect of the bullet. Claimant is now hemiplegic and is incontinent of urine and bowel. His lower extremity is completely flaccid. He has no use of his legs or the left side of his body, including the left arm, but is able to use his right arm. He is rational; he is unable to turn himself in bed, and is totally and permanently disabled and has been since the date of his injury.

8. Dr. Charles W. McGrady, Jr. testified that claimant now and throughout his lifetime, needs constant nursing care consisting of being turned every two hours, twenty-four hours a day, with alcohol rubs on his back two to three times during every eight-hour period to avoid back sores; that he needs a bath every morning and an enema approximately every other day; that his incontinence equipment must be changed regularly; that he needs someone in attendance at all times.

Dr. David Lane, neurosurgeon, testified that claimant does better and is happier at home; that he needs an attendant during all of his waking hours and someone near at all times.

Mrs. Beulah Cook, claimant's wife, testified that claimant is not happy in a nursing home; that she works during the day; that she and claimant have two children, a daughter eighteen years of age and a boy nine years of age; that she must work hereafter because her husband cannot; that it would work a hardship on her for claimant to be placed in a nursing home for her to work during the day at the employer's grocery store, and to visit her husband during

the evenings at a nursing home would be exhausting and leave her little time to do her housework and be with her children.

Claimant testified by deposition taken on October 15, 1959, that he would rather stay at home than go to a nursing home; that his wife is in and out during the day, his wife leaves home at approximately 8:30 in the morning, returns for lunch about 12 noon to 1 P.M., and returns from work at approximately 8 P.M. each evening except on Friday and Saturday nights she works until approximately 10 or 11 P.M.

Mr. E. H. Schanitzler, owner of the Sun Ridge Manor Nursing Home, a converted motel, located at 1701 North Federal Highway, Fort Lauderdale, testified that Mr. Cook was in his nursing home for a 24 hour period and from what he knows of claimant's care during that time, he would provide all of his needs for $300 monthly plus medication, on a trial basis.

9. That claimant is now remaining at home and has the services of a practical nurse from 7 A.M. to 3 P.M. daily, who gives him enemas as needed, together with baths, turns him and rubs his back with alcohol, and changes and cleans the Darol bags (for incontinence of urine and bowels) at $12 for an eight hour shift. Thereafter, a colored woman attends claimant from 3 P.M. to 11 P.M. daily as an attendant and who primarily turns him at regular intervals. This domestic is paid $1 per hour, and $1.50 per day transportation costs or approximately $60 weekly. Claimant's wife is presently caring for him from 11 P.M. until 7 A.M.

The undersigned finds that it is in the claimant's best interests and it is reasonable and necessary to his good physical and mental health that he remain at home and receive the care and attendance of a licensed practical nurse and the medical attention that he is now being furnished, and that there is no authority requiring that claimant be placed in a nursing home, against the objections of the claimant, simply because to do so would decrease the cost of his care.

10. At the time of his injury claimant was 51 years of age, and had an average life expectancy, according to the American Experience Table of Mortality, of 20.20 years.

11. All the medical reports in the workmen's compensation file were introduced into evidence upon stipulation of the parties.

12. Dr. Charles W. McGrady testified that the Coral Pines Nursing Home was operated on a semi-hospital basis, but the nursing home was equipped to furnish, as part of the ordinary course of its

operation, all the care that claimant required, and there should have been no charge for special nursing services, that a room rate of $22 daily is a reasonable charge and should have included any extra care claimant may have needed, and that the additional $11 daily charge for claimant's care for special nursing services was unwarranted.

The undersigned finds that the claimant was a patient in the Coral Pines Nursing Home from May 4 through June 4, 1959, for which the Nursing Home is entitled to payment at the rate of $22 per day.

13. Dr. A. Ehlert, neurosurgeon, was called and in consultation with Dr. David Lane at the request of claimant's wife, and his bill for services is not the responsibility of the carrier herein. In addition, Dr. Ehlert visited the claimant incidentally as the result of a neurological examination of a different patient at the Holy Cross Hospital, and a reasonable fee for his services is $75.

14. Claimant's attorney, Ralph A. Hauser, Esq., has provided valuable services to claimant, especially with respect to claimant's right to further medical care in his home, for which he is entitled to a reasonable attorney's fee.

It is therefore ordered that the employer, Georgia Grocery, Inc., through its carrier, Manhattan Fire and Marine Insurance Co.—

(1) Continue paying to claimant compensation for permanent total disability at the rate of $35 weekly in accordance with the Workmen's Compensation Law.

(2) Pay the bill of the Coral Pines Nursing Home for services furnished to claimant at the rate of $22 daily for the period from May 4 through June 4, 1959.

(3) Furnish to claimant such medical care and nursing services and appliances in his home as the nature of his condition and care requires, even though the same exceeds the cost of his care in a private nursing home.

(4) Pay the costs of this proceeding, including the cost of claimant's expert medical witnesses, if any.

(5) Pay to claimant's attorney, Ralph A. Hauser, as a reasonable attorney's fee for services rendered to claimant, the sum of $2,500.